FILED
 2009 Sep-16 PM 02:28
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>SOUTHEASTERN ENVIRON-MENTAL INFRASTRUCTURE LLC; LARRY RIVERS,<br><br>    Defendants.<br>_____<br><br>SOUTHEASTERN ENVIRON-MENTAL INFRASTRUCTURE L.L.C.,<br><br>    COUNTER CLAIMANT,<br><br>v.<br><br>PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,<br><br>    COUNTER DEFENDANT, | Case Number: **2:06-cv-0667-SLB** |

## MEMORANDUM OPINION

This case is presently before the court on Motions in Limine, (docs. 210, 211),[1] filed by defendants Larry Rivers and Southeastern Environmental Infrastructure L.L.C. ["SEI"],

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

asking the court to determine the amount of damages and post-judgment interest owed by Penn National under the umbrella policy. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that Penn National is obligated to pay Larry Rivers (1) $225,000.00, plus the amount paid by Penn National to the Joint Venture defendants[2] under the CGL policy for Rivers's accident; (2) interest on the amount payable under the umbrella policy; and (3) costs. Therefore, the Motions in Limine, (docs. 210, 211), are due to be sustained in part and overruled in part.

Penn National issued a CGL policy, No. CL9 0603924, to SEI, which named the Joint Venture defendants as additional insureds. For purposes of this case, Penn National has offered an umbrella policy, No. UL90603924, to be treated as in effect at the time of Rivers's accident.[3] Rivers sued SEI and the Joint Venture defendants in the Circuit Court of Jefferson County for injuries suffered while he was working on a project for SEI. The Joint Venture defendants settled with Rivers for $275,000, and, following a jury trial, the state court entered judgment against SEI and in favor of Rivers for $1,225,000.

Penn National filed a declaratory judgment action in this court, and SEI counterclaimed. Following the filing of cross motions for summary judgment, the court

---

[2]The Joint Venture defendants are Doster Construction Company, Inc., Integral Building Group, L.L.C., Metropolitan Gardens Developers, L.L.C., and Integral Doster Metro Gardens Construction, a Joint Venture,

[3]According to the record, the umbrella policy was "discovered" in the underwriting file even though it had been cancelled by SEI. (Doc. 120, Ex. 20 at 185-86 [page number references refer to the page numbers reflected on the court's CM/ECF system].) Penn National has agreed to make the cancelled umbrella policy available in this case.

found that the CGL policy did not cover Rivers's claims against SEI because SEI had failed to notify Penn National of the accident; that the CGL policy provided coverage for the Joint Venture defendants; and that the umbrella policy provided coverage to SEI.  The parties are presently before the court for purposes of determining how much coverage the umbrella policy provides.

> The umbrella policy states:
>
> We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of
>
> > Coverage A – Bodily Injury and Property Damage Liability
> > Coverage B – Personal Injury and Advertising Injury Liability
>
> to which this insurance applies caused by an "occurrence" happening anywhere in the world.

(Doc. 120, Ex. 12 at 6.)  The policy defines "ultimate net loss" as "the sum actually paid or payable due to a claim for which the insured is liable either by a settlement to which [Penn National] agreed or a final judgement."  In this case, the ultimate net loss is the amount of the judgment against SEI, $1,225,000.

In this case, the policy defines "applicable underlying limit" as "the greater of . . . the amount of insurance stated in the policies of 'underlying insurance' in the Schedule of Underlying Insurance or any other available insurance less the amount by which any aggregate limit so stated has been reduced solely due to payment of claims . . . ." (Doc. 120, Ex. 12 at 15.)  Due to the unique circumstances of this case, there is no Schedule of

3

Insurance. (*See* doc. 199 at 6.) However, Penn National has represented to the court that the CGL policy, No. CL9 0603924, is the only policy of applicable underlying insurance. (Doc. 181 at 4 and Ex. A at 5.) The occurrence limit of the CGL policy is $1 million.[4] (Doc. 120, Ex. 11 at 10.)

According to this court's previous Order, the CGL policy covered the Joint Venture defendants claims arising from Rivers's accident. (*See* doc. 160 at 3.) Therefore, the "applicable underlying limit" is the $1 million occurrence limit of the CGL policy less the amount paid to the Joint Venture defendants to settle their claims. (*See* doc. 120, Ex. 12 at 15.) The "ultimate net loss," $1,225,000, is in excess of the "applicable underlying limit," which is $1 million less the amount paid to the Joint Venture defendants under the CGL policy; this is the amount due Rivers on behalf of SEI under the umbrella policy. (*See* doc. 120, Ex. 12 at 6.)

SEI and Rivers also argue that SEI is due interest on the full amount of the judgment, $1,225,000, pursuant to Supplementary Payments provision of the policy, which states:

> b. We will have the right and duty to defend any "suit" for damages which are payable under Coverage A or B (*including damages wholly or partly within*

---

[4]Plaintiff contends that the "aggregate limit" referred in this provision is the $2,000,000 general aggregate limit of the CGL policy. (Doc. 212 at 8.) However, as Rivers's accident was a single occurrence, the "occurrence limit" is the appropriate applicable limit. (*See* doc. 120, Ex. 11 at 22.) The phrase "any aggregate limit" as used in the definition of "applicable underlying limit" refers to the total limits of all policies listed on the Schedule of Underlying Insurance or other available policies. (Doc. 120, Ex. 12 at 15.) It does not refer to the "general aggregate" limits of those policies.

>    *the "retained limit"*) but which are not payable by a policy of "underlying insurance", or any other available insurance, because:
>
>    (1) Such damages are not covered; or
>    (2) The "underlying insurance" has been exhausted by the payment of claims.
>
>    . . .
>
>    e. We will pay, with respect to any claim or "suit" we defend in (b) above:
>
>    . . .
>
>    (6) All interest on the full amount of any judgement that accrues after entry of the judgement and before we have paid, offered to pay, or deposited in court the part of the judgement that is within the "applicable limit of insurance".
>
>    These payments will not reduce the limits of insurance.

(Doc. 120, Ex. 12 at 6-7.) The umbrella policy requires Penn National to pay interest on "the full amount of any judgment" only when it "defends" this case under the terms of the umbrella policy. (*Id.*)

The evidence is undisputed that Penn National tendered a defense to SEI under the CGL policy pursuant to a reservation of rights. Therefore, the court finds that this section of the umbrella policy does not apply and that SEI is not entitled to an award of interest on the full amount of the state-court judgment. Rather, interest is payable only on the unpaid portion of the judgment.

5

**CONCLUSION**

For the foregoing reasons, the Motions in Limine filed by Rivers and SEI, (docs. 210 and 211), are due to be sustained in part and overruled in part. An Order setting forth the amount owed under the umbrella policy to Rivers on behalf of SEI will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 16th day of September, 2009.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE